YARRUT, Judge.
This is an appeal from a judgment of the district court granting Plaintiff’s (ven-dee) demand for specific performance by Defendant (vendor) of an agreement of sale of an immovable; and dismissing Defendant’s reconventional demand for a rescission on the grounds of fraud in its procurement, and for lesion. The property involved is:
Unit No. 2 of Block 40, Section “A”, Pontchartrain Gardens Subdivision Jefferson Parish, situated in Section 44, Township 12 South, Range 10 East, Southeastern District of Louisiana, more particularly described as follows: Unit No. 2 of Block 40 forms the north half of the Block and measures 157.29 feet on Harvard Avenue; 658.11 feet on Quincy Street, 156.16 feet on Lime Street, 654.19 feet on center line running through the Block, which said line is parallel to the north line of the Block 150 feet south therefrom; containing 2.26 acres, more or less. Block No. 40 is bounded on the north by Quincy Street and measures 658.11 feet thereon; on the east by Lime Street, and measures 312.32 feet thereon, on the South by Rye Street, and measures 650.27 feet thereon; and on the west by Harvard Avenue, and measures 314.58 feet thereon.
Plaintiff alleged he agreed to pay $20,-000.00 cash and assume liens and privileges recorded against the property for off-site improvements, consisting of paving, sewerage, water and gas, amounting to $24,944.28; that Defendant declined, without valid reason, to execute the sale and deliver title as per agreement of sale.
Defendant admitted the agreement, and reconvened for the rescission of the sale for lesion, charging he was fraudulently induced to sign the agreement by Plaintiff and his agent in informing him, an illiterate, that the property was being sold for $44,944.28, whereas the sale was only for $20,000.00.
*156 The district judge in his written reasons for judgment, said:
“The evidence in the case does not reveal that fraud was practiced by either Mr. Fray or the real estate agent. Assuming there was fraud, the plaintiff was not a party to the same. Consequently, defendant’s allegations as to fraud and ill practice are not supported by the evidence.
“The purchase price of the property was in the sum of $20,000.00, plus assumption of the liens totalling approximately $24,000.00. Despite the testimony of Mr. Kraft, plaintiff’s expert, it is the duty of the property owner, in the absence of a contract to the contrary, to deliver to the purchaser a clear title to the property. Thus the purchase price was at least $44,000.00, and in order to set aside the agreement on the grounds of lesion it was necessary for defendant to establish that the value of the property was in excess of $88,-000.00. This burden has not been met.”
Regarding Defendant’s claim of fraud, the record shows he acquired the property one year before for $15,000.00, of which $5,000.00 was cash paid, and the balance represented by a homestead vendor’s lien and mortgage for $10,000.00. Before he gave the realtor a listing contract to sell for $50,000.00, Defendant was advised the parish authorities had recently recorded against the property liens and privileges for public improvements amounting to $24,944.28. This frustrated Defendant and his wife, because they had four or five other outstanding mortgages on the property they owned, on which they were paying $800.00 a month, and the payment of these liens and privileges would add an additional $200.00 a month, or $2,400.00 annually, for ten years. Defendant then consulted his wife’s nephew, a practicing attorney.
Defendant was so upset over the thought of having to pay these liens that he told his nephew he would be willing to surrender the property to the homestead for the cancellation of its vendor’s lien and mortgage. The nephew contacted the realtor, and approved the agreement prepared by the realtor, with a minor change. The nephew-attorney called at the home of his aunt and personally explained to Defendant and his aunt that they would get $20,000.00 cash, and the purchaser would assume the $24,-944.28 liens for off-site improvements, making a total sales price of $44,944.28. After this explanation, Defendant and his wife signed the agreement without question. A day or two later Defendant called his nephew-attorney and said he didn’t understand he would receive only $20,000.00, but would receive $44,944.28 cash, net.
The testimony of Defendant and his wife proves conclusively that they were not “illiterates.” Defendant admitted he owned and operated a lumber yard, a saloon for many years, and bought five or six pieces of real estate financed by cash and mortgages. Their testimony was evasive and conveniently forgetful. Had the property been sold for $50,000.00, as they originally listed it with the realtor, Defendant and his wife would have had to pay these liens and privileges out of the $50,000.00. So instead of getting $20,000.00, the net received would have been about $25,000.00. Defendant’s nephew-attorney testified he explained to his aunt and uncle that, with the $20,000.00 cash payment, after deducting the realtor’s commission of 10%, they would realize a profit of about $3,000.00 on their original purchase for $15,000.00.
The trial court’s finding that Defendant and his wife were not induced to sign the agreement, as a result of any fraud practiced on them by their nephew-attorney or the realtor, is correct. There is not one scintilla of evidence that warranted the charge of fraud.
Regarding the question of lesion, counsel for Defendant insists that the $24,944.28 unpaid liens and privileges assumed by Plaintiff should not be considered part of the purchase price, because it was the practice and *157 custom for purchasers of lots in this subdivision to assume such payment, in addition to paying the cash portion of the purchase price.
 The practice of purchasers assuming to pay liens and privileges existing against the property purchased was merely a method of financing. Since it is the duty of a vendor to deliver a merchantable title, free of encumbrances, the assumption by the purchaser of such encumbrances is part payment of the purchase price. Martin v. Delaney, 47 La.Ann. 719, 17 So. 264; see Brandon v. Slade, 122 La. 395, 47 So. 694.
Regarding the proof vel non of lesion, the evidence is clear that the property involved consisted of 15 undivided lots facing the rear of commercial establishments, and the average price per lot in comparable sales, plus the assumption of the outstanding off-site liens, did not exceed $88,000.00, as found by the district judge. The evidence as to value was given by two realtors, one for Plaintiff and one for Defendant, plus copies of notarial acts of sale of comparable lots.
According to the testimony of Defendant’s own realtor, the market price was not more than $48,000.00 without the $24,944.28 for off-site improvements, or a total value, with the improvements, of $73,000.00.
There is little difference between the listing with the realtor at $50,000.00, with no provision for assumption by the prospective purchaser of liens for off-site improvements, and the ultimate sale agreement for $20,000.00 cash, and the assumption of the liens, viz:

or a difference between the two of $2,055.72, which tolerance was permitted under the original listing contract with the realtor who was authorized to:
“sell the property for $50,000.00 cash, or for any other price or terms as may thereafter be agreed upon.”
In order to rescind for lesion, the value of the property would have had to be in excess of twice $44,944.28 or say, $90,000.00.
The rule to establish value in lesion cases is not the highest value of comparable sales as in expropriation cases, but is more often the lowest or mean value of comparable sales. See Foos v. Creaghan, 226 La. 619, 76 So.2d 907, 908; Hyde v. Barron, 125 La. 227, 51 So. 126; Martin v. Delaney, supra.
Accordingly, the judgment of the district court is affirmed; Defendant-Appellant to pay all costs in both courts.
Judgment affirmed.