496 So.2d 1374 (1986)
Gertrude F. WATERBURY, et al., Plaintiffs-Appellees-Appellants,
v.
Robert L. WATERBURY, Defendant-Appellant-Appellee.
No. 85-1187.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
Writ Denied January 9, 1987.
*1375 Carl W. Cleveland, New Orleans, for defendant-appellant-appellee.
Bruce Gaudin, Opelousas, for plaintiffs-appellees-appellants.
Before GUIDRY, DOUCET and KING, JJ.
GUIDRY, Judge.
This appeal stems from a suit by the widow and children of William R. Waterbury seeking to set aside the transfer by William of 101.32 acres of land (the Blue Springs property) in St. Landry Parish to Robert Waterbury, his brother. The transfer is dated December 30, 1974, but was not recorded until November 14, 1975, the day William Waterbury died. The act was in the form of a cash sale with the recited consideration being $20,264.00 ($200.00 per acre). William had acquired the property from Robert in 1967 for $15,198.00. Robert had originally acquired the land in 1961 for $20,000.00.
In their petition, plaintiffs alleged that the 1974 sale should be annulled, set aside and rescinded as a simulation, a disguised donation, or for lesion beyond moiety. The learned trial judge found that the sale was neither a simulation nor a disguised donation. He did, however, find that the sale was lesionary, as the recited consideration of $20,264.00 was less than one-half of the value of the land at the time of the sale, which he found to be $87,500.00.
Defendant appealed alleging that the trial court erred in finding the transfer of the Blue Springs property to be lesionary. Plaintiffs answered the appeal maintaining that the trial judge erred in not finding the sale a simulation and, in the alternative, not accepting the plaintiffs' experts' appraised value of the land as $101,500.00.
The issues to be decided on appeal are threefold:
1. Was the transfer of the Blue Springs property a simulation?
2. Was the transfer of the Blue Springs property lesionary?
3. Was the trial court in error in valuing the land at $87,500.00?

WAS THE SALE A SIMULATION?
At the outset, we observe that plaintiffs do not contend that the transaction in question was a donation in disguise. Rather, plaintiffs assert that the transaction is a "pure simulation", the parties having pretended to transfer the property, but in fact both transferor and transferee intended that the transferor retain ownership of the property. See Owen v. Owen, 336 So.2d 782 (La.1976).
A panel of this court in Boagni v. Waterbury, 403 So.2d 856 (La.App. 3rd Cir.1981), *1376 was called upon to decide if the very sale, at issue in this case, from William Waterbury to Robert Waterbury was a simulation. In addressing that issue, Judge Doucet, as organ of the court, stated:
"The general rule is that the party alleging a simulation has the burden of establishing it with a reasonable certainty. D'Angelo v. Nicolosi, 183 La. 1039, 165 So. 193 (1936). In some cases, however, the plaintiff is aided by the existence of a legal presumption of simulation, which has the effect of shifting the burden to the defendants to establish the validity of the transactions under attack.
This presumption of simulation arises in two manners. The first occurs when a seller remains in possession of the thing he sells, either under a precarious title, or by reserving the usufruct of the thing. LSA-C.C. Art. 2480; Ingram v. Freeman, 326 So.2d 565 (La.App. 3rd Cir. 1976), and the cases cited therein. The second occurs when the party alleging the simulation produces evidence of circumstances which create a highly reasonable doubt or suspicion about the honesty or validity of the transaction. Smith v. Smith, 239 La. 688, 119 So.2d 827 (1960); Ingram v. Freeman, supra, and the cases cited therein."
Boagni, supra, at 858, 859.
In Boagni, supra, this court affirmed the trial court's conclusion that the presumption favoring the plaintiffs applied but reached the conclusion, as did the trial court, that the defendant succeeded in establishing the validity of the transaction. In so concluding this court stated:
"The final circumstance asserted by plaintiff, the retrocession of the 101.32 acre tract sold to William B. Waterbury, plaintiff considers to be the most suspicious. The trial judge disagreed with that conclusion, finding that in effecting the transfer there was a settlement of accounts between the brothers, which indirectly confirmed the earlier sale. The finding is supported by the fact that part of the consideration for the sale back to Robert Waterbury was the retirement of a demand note that William Waterbury had executed in his brother's favor at an earlier time.
Although the trial judge didn't articulate his evaluations of credibility, we believe that his acceptance of the defendants' testimony is implicit in his written reasons for judgment. After carefully scrutinizing that testimony and the accompanying documentary evidence, we cannot say that he was clearly wrong in doing so. The defendants' explanations of the unusual circumstances surrounding the transactions were not so implausible or unlikely as to be beyond reasonable belief. Since their testimony together with the other evidence in the record furnishes a reasonable factual basis for the trial judge's finding that the transactions were real and not simulations, we are not free to disturb that finding under the standard of appellate review set out by our Supreme Court in Canter v. Koehring Co., 283 So.2d 716 (La.1973) and further explained in Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978)...."
Boagni, supra, at 861.
Although our decision in Boagni, supra, is not res judicata, because the demand for simulation in that suit involved parties different from those present in the instant action (La.R.S. 13:4231[1]), the ultimate determination of the trial and appellate courts in that case, on the basis of the same evidence, is persuasive.
In the instant case, a different trial judge of the 27th Judicial District Court again considered a demand of simulation levelled against the sale of December 30, 1974 from William Waterbury to Robert Waterbury. In written reasons for judgment denying plaintiffs' demand for rescission of the *1377 sale, the learned trial judge in this case stated:
"I uphold the sale of December 30, 1974, as genuine.
There are multiple considerations. None is alone determinative.
It is true the Waterbury brothers were very close. However, there was no evidence of any estrangement between the deceased Waterbury and his wife and children. The evidence indicates a loving family relationship. At the time, Robert Waterbury was very well fixed financially. He had no dependents. The deceased Waterbury was comfortable enough but not nearly as affluent as his brother. Additionally, he had dependents.
It is inconceivable that the deceased Waterbury would have proceeded to favor a wealthier brother, albeit a very close one, to the prejudice of his wife and children who at the time were destined to become fatherless. I doubt that there is in the whole of Louisiana's reported jurisprudence a simulation such as is contended for in this case. The attempt to deceive a creditor is one thing. To attempt to favor a wife over children, vice versa or to be partial to some children are also things apart. But to favor a brother over a wife and children is extremely unusual and out of the ordinary. It cannot be believed without proof stronger than exists in this case.

There is sufficient proof of consideration for the sale. The note was signed by Waterbury. Defendant had an explanation for his consideration although it was not a completely satisfying one. There is a presumption of consideration on a note duly signed without fraud or duress. These latter are not alleged. There is also the check. It was cashed. The delay in cashing does not make it nonconsideration ... It is significant that the check amount ($3,988.53) was the exact difference between the note balance and the purchase price." (Emphasis ours).
It is well settled in our jurisprudence that a transaction will not be set aside as a simulation if any consideration, no matter how small, is given since the reality of the sale is thus established. Norris v. Cappel, 344 So.2d 1151 (La.App. 3rd Cir.1977); Russell v. Culpepper, 337 So.2d 226 (La.App. 3rd Cir.1976), affirmed, 344 So.2d 1372 (La.1977); Bagala v. Bagala, 237 La. 60, 110 So.2d 526 (1959).
Although the sale at issue purports to be a cash sale, the record reveals that the actual consideration consisted of the cancellation of a $16,074.54 note (dated October 15, 1974), plus the interest due on the note and a check for $3,988.52 (the exact difference between principal and interest on the note and the sale price). While there exists some question as to the consideration William received for making the note, it is uncontested that the $3,988.52 check payable to W.B. Waterbury was negotiated (albeit almost four months after it was dated) and placed in the joint checking account of William B. and Gertrude F. Waterbury.
We find that the evidence adduced at the trial of this matter fully supports the trial court's conclusion that the sale from William Waterbury to Robert Waterbury dated December 30, 1974 is indeed a valid sale.

WAS THE SALE OF THE BLUE SPRINGS PROPERTY LESIONARY AND WHAT IS ITS TRUE VALUE?
We address these final two issues together since it is obvious that the true value of the land involved determines whether or not the sale was lesionary.
It is well settled that:
"[i]n an action for rescission for lesion beyond moiety, the vendor must prove by clear and convincing evidence that the price given was less than one-half of the value of the thing sold. La.Civ.Code arts. 1861(2), 2591; and Bisco v. Middleton, 383 So.2d 1047 (La.App. 1st Cir. 1980). The standard to be applied to determine the value of the property is fair market value at the time of the sale. *1378 La.Civ.Code arts. 1870, 1871, 2590; and Bisco v. Middleton, supra."
Goulas v. Goulas, 426 So.2d 735 (La.App. 3rd Cir.1983), writ denied, 478 So.2d 907 (La.1985).
The difficulty in this case, and in most other cases where lesion is claimed, is the difference in value placed on the subject property by the parties' respective experts. In discussing this difficulty, our brethren of the Fifth Circuit in Montegut v. Davis, 473 So.2d 73 at 76 (La.App. 5th Cir.1985), stated:
"In an action to rescind a sale for lesion beyond moiety, when there are great variances among appraisals, it is the court's function to examine each appraisal to determine which is more reasonable; the court is not bound to accept or reject one expert's testimony, but parts of each expert's testimony may be accepted when the testimony so accepted is based on proper facts and sound reasoning. Bisco v. Middleton, 383 So.2d 1047 (La.App. 1 Cir.1980).
The trial judge's assessment of testimony given by appraisers is entitled to great respect. Evergreen Plantation, Inc. v. Zunamon, 319 So.2d 543 (La.App. 2 Cir.1975). Where the experts differ, the trial judge is in a better position to determine their credibility and the weight to be accorded their testimony and his decision as to the valuation of the property should not be disturbed on appeal unless shown to be manifestly erroneous. State, Department of Highways v. Wax, 295 So.2d 833 (La.App. 1 Cir.1974). The rule to establish value in lesion cases is not the highest value of comparable sales as in expropriation cases, but is more often the lowest or mean value of comparable sales. Weber v. Coppola, 176 So.2d 154 (La.App. 4 Cir.1965). However, speculative values may not be considered in determining the market value of a particular piece of property. Mullins v. Page, 457 So.2d 64 (La.App. 2 Cir.1984)."
Each of plaintiffs' three experts appraised the Blue Springs property to have been worth $1,000.00 per acre at the time of the sale in 1974. Defendant's expert placed a maximum value of only $500.00 per acre in 1974 (his minimum valuation was $300.00 per acre). The trial judge found the approximate 100 acres to be worth $87,500.00 or about $875.00 per acre. Although the trial judge did not favor us with his method of calculation, he may have averaged the value estimate of each expert: (3 × $1000/acre) + (1 × $500/acre) ÷ 4 = $875/acre × 100 acres = $87,500.00. On the other hand, he may have considered the testimony of plaintiffs' experts to have been more reasonable but the maximum value rather than the minimum value. In any event, we find no error in the trial court's valuation and reject plaintiffs' claim that the trial judge under valued the property.
We also reject appellant's argument that plaintiffs failed to adequately prove the value of the Blue Springs property to be at least $87,500.00. The three experts called by plaintiffs are all from the Lafayette-Opelousas area where the subject property is located. Together they have more than 50 years experience in real estate sales and appraisals. Each appraiser made an on-site inspection of the property, studied comparable sales, and interviewed residents in the area of the Blue Springs property before independently arriving at his appraisal value of $1,000.00 per acre.
Defendant, on the other hand, offered only one expert, Mr. L.X. Lamulle. Although Mr. Lamulle has approximately 25 years experience, none of his experience is in the Lafayette Opelousas area. In fact, Mr. Lamulle testified that, because he was unfamiliar with the area, he was unable to locate some of the property he used for comparison.
Appellant further argues that, since the trial court in Boagni, supra, refused to set aside the 1967 sale from Robert to William as a simulation and since this decision was affirmed by this appellate court, we should use the sale price of the 1967 transaction of $15,198.00, as a basis for finding the $87,500.00 valuation by the trial judge in this *1379 proceeding excessive. The trial court in the Boagni case, however, was not called upon to value the land, but was only called upon to rule upon the question of simulation. As pointed out above, to defeat a claim that a sale was a simulation, one must only demonstrate that some consideration, no matter how small, was given in the transaction. Clearly, any finding by a previous court that the sale of the Blue Springs property was not a simulation has no effect on a subsequent finding by another court that a later sale was lesionary.
For these reasons, we find no error in the trial judge's valuation of the land at $87,500.00.
Finally, we consider appellant's allegation that additional monies paid by Robert to William after the sale date (December 1974) should be added to the price recited in the act of sale of the Blue Springs property before we rule the sale to be lesionary.
The record reveals that, even though Robert and William were brothers, many of their business transactions with each other were done at arm's length, i.e., Robert testified that even as children the two boys confected notes as evidence of outstanding debts between them. In light of this revelation, the testimony concerning how the brothers periodically accounted with one another and considering that the act of sale recited only a specific consideration of $20,264.00, we find this argument without substance.
Accordingly, for the reasons stated, the judgment appealed from is affirmed. All costs of this appeal are to be borne by appellant, Robert L. Waterbury.
AFFIRMED.
NOTES
[1] La.C.C. art. 2286 of the 1870 Civil Code was redesignated as La.R.S. 13:4231 by Acts 1984, No. 331, Sec. 7, effective January 1, 1985.