746 So.2d 752 (1999)
Clara Gossen CAILLOUET, Plaintiff-Appellee,
v.
ZWEI BRUDERLAND, L.L.C., Defendant-Appellant.
No. 99-590.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1999.
*754 Jack Derrick Miller, Crowley, for Clara Gossen Caillouet.
Jason Wayne Robideaux, Lafayette, for Zwei Bruderland L.L.C. et al.
BEFORE THIBODEAUX, COOKS, and WOODARD, Judges.
WOODARD, Judge.
Ms. Clara Gossen Caillouet sought to rescind the sale of some property to her nephews, Mr. Christopher Charles Arcement and Robert Joseph Arcement, and their Limited Liability Company, Zwei Bruderland (Zwei) on the ground that it was a lesion beyond moiety. The purchase price was $125,000.00. Finding that the property's fair market value was $260,000.00 and that value for the payment of the property was $118,128.87, the trial court ordered that the sale be rescinded, giving Zwei the option to either return the property and all of its fruits from December 6, 1996 or to keep it and pay Ms. Caillouet $141,871.13, in addition to the price recited in the act of sale. Zwei suspensively appeals. We affirm.

FACTS
On March 6, 1996, Ms. Clara Gossen Caillouet, transferred, by a credit sale to Zwei, property described as follows:
That certain parcel of land, containing 204.74 acres, together with any improvements thereon and all rights-of-way, servitudes and easements appertaining thereto, located in Section 37, Township 9 South, Range 2 East, of Acadia Parish, Louisiana, having an irregular northerly side of 2,652.27 feet, by a depth on its easterly side of 5,478.08 feet, which parcel of land is designated as "204.74 ACRES" on the plat of survey prepared by Michael P. Mayeux, Registered Professional Land Surveyor, dated May 27, 1993, which is recorded under entry number 620530 of the conveyance records of the Clerk of Court's office in and for the Parish of Acadia, and having such further boundaries, measurements and dimensions as shown thereon. The said property is bounded, now or formerly as follows: Northerly by a public highway (La.Hwy.98) and properties owned by Raymond N. Gossen, Leo P. Didier and Henrietta G. Didier, easterly by the properties owned by Dorothy N. Thevis, Rita N. Menard, William A Neu, and westerly by Section 17, Township 9 South, Range 2 East.
LESS & EXCEPT that certain tract of land containing 2 acres, more or less, described as commencing at the Southwesterly corner of the tract described as Raymond Gossen, et al and from said point thence South 18 degrees 50 minutes 59 seconds East, 120 feet, more or less, to the center line of the canal, a distance of 650 feet, more or less to the center line of LA Highway 98, a distance of 370 feet, more or less.
Being a portion of the property acquired by vendor in the Act of Partition dated April 6, 1956, and recorded under entry number 280155 of the conveyance records of the Clerk of Court's Office in and for the Parish of Acadia, Louisiana.
*755 The act of sale also provides that Ms. Caillouet retained one-half of the oil, gas, and other mineral rights, as well as the usufruct of the house located on the property. It also specified a sale price of $125,000.00 to be paid in ten annual installments of $18,003.75 with the first payment to be made on March 6, 1997. Apparently, Ms. Caillouet also agreed to pay for the cost of closing.
In a letter, dated December 6, 1996, claiming that the transaction was inequitable, Ms. Caillouet demanded that her nephews return the property by December 17, 1996. On February 25, 1997, Ms. Caillouet filed suit, claiming that the sale should be rescinded for lesion beyond moiety and annulled for lack of capacity and fraud.
In a hearing held April 7-8, 1998, both Ms. Caillouet and Zwei presented expert testimony on the value of the property. Upon conclusion of the parties' case, the trial court decided to appoint a court appraiser from a list to be submitted by the parties, excluding Mr. Fred Gossen, a local appraiser with family ties to the parties. Eventually, the trial court appointed Mr. Len Godshall as a court appraiser.
In a hearing held on October 28, 1998, Mr. Godshall presented a summary report, wherein he appraised the value of the property to be $260,000.00. Following Mr. Godshall's testimony, Zwei attempted to use additional experts as "rebuttal witnesses." Notwithstanding, the trial court limited the use of rebuttal experts, and counsel for Zwei proffered some evidence into the record.
On December 15, 1998, finding that the property had a fair market value of $260,000.00 and that the actual value of the consideration for the property should be $118,128.87, the trial court decided to rescind the sale for lesion beyond moiety. It ordered that Zwei be granted thirty days to exercise the option either to return the property and all of its fruits from December 6, 1996 or to keep the property and pay Ms. Caillouet $141,871.13, in addition to the price recited in the act of sale. Zwei opted to return the property, but suspensively appeals.

ASSIGNMENTS OF ERROR
Zwei alleges that the trial court erred in:
1. Ordering that the property be appraised as three separate tracts according to the highest and best use analysis instead of a single farm tract with a rural home site.
2. Relying on Mr. Godshall's opinion once he admitted having used data provided by Mr. Fred Gossen.
3. Relying on Mr. Godshall's report when his evaluation of the property was erroneous.
4. Restricting Zwei's examination of Mr. Godshall's on the issue of the property's original sale price and then used the calculations suggested by Mr. Godshall to determine whether the sale should be rescinded.
5. Relying on Mr. Lawayne Sieferman's calculation of the cash sale value of the original sale price after it found his general appraisal of the property to be excessive.
6. Rejecting Zwei's use of Mr. Stewart Stover's expert testimony to rebut Mr. Godshall's summary report's assumption that there was no environmental contamination on the property.
7. Rejecting Zwei's use of Jack Stelly's expert testimony to rebut Mr. Godshall's summary report on acreage of the property.
8. Restricting Zwei's use of Mr. George Parker's expert testimony, to rebut Mr. Godshall's appraisal.

LAW

MR. GODSHALL'S RELIANCE ON MR. FRED GOSSEN'S DATA
In its assignment of error number two, Zwei alleges that the trial court erred *756 by not striking Mr. Godshall's testimony and summary report because it violated the parties' and court's prior stipulation that Mr. Fred Gossen would not be appointed as an expert in the litigation because of his family ties with the parties. Specifically, Zwei insists that the trial court's failure to inform Mr. Godshall that Mr. Fred Gossen should not be used as an expert in this litigation violated La.Code Evid. art. 706. It contends that the summary report should have been excluded by the trial court because its probative value was substantially outweighed by the danger of unfair prejudice, pursuant to La. Code Evid. art. 403. We disagree with Zwei's specification of error.
When it expressed its hesitation to retain Mr. Fred Gossen as an expert in the litigation, the trial court stated:
I know that Mr. Gossen is related to parties in this case, and while he is knowledgable [sic], unless requested by all parties, I'm not going to ask him. If youWhen you read the Article, you will see that thethe expert I appoint must agree to do so. I can't force him or her to do it.
I've known Mr. Gossen for many years, but no, I'm not going to put him in that position unless everybody asks me to, and then I'm just going to ask him. But if you don't, I'm not going toIt would not make sense to bring his opinion into question as a result of some perceived relationship with one side of this family or the other.
As a result, the trial court named Mr. Godshall as the court appraiser. During trial, Mr. Godshall admitted that, to perform his task, he used comparables which Mr. Fred Gossen provided. He stated:
I went and visited with himwith his office.... He's very well respected, and he didn't influence me. He gave me whatwhat I term to be factual information. I took factual information, analyzed it independently of [sic] any influence from him, and arrived at my own conclusion of value."
Also, an exchange between Zwei's counsel and Mr. Godsahll revealed the following:
Q Okay, and your appraised comparable data was made by Lane Godshall, unless noted. You don't note anywhere in here that the comparable data was obtained from Fred Gossen, do you?
A No.
Q How come you didn't
A `Cause he didn'the didn't provide any
Q Was he provided [sic] professional assistance when he gave you the residential comparable information that we've already marked in Exhibit D-3?
A He was providing some comparable sales but that's normally what we do in the course of our business.
Q And you utilize those comparables [sic].
A We do utilize them, but he didn't provide any assistance regarding the outcome of theof the report or my conclusions of value. And that's what we typically will note if someone provided assistance because the assistance would reflect on the outcome of theof the value conclusions.
Q Well
A In the analysis, and he did not.
We disagree with Zwei's argument that the trial court violated Article 706 on the ground that it did not instruct Mr. Godshall to not use any information from Mr. Fred Gossen based on stipulations that the parties entered into the record.
A trial court's power to appoint an expert in a civil case is set forth in La.Code Evid. art. 706(A), which states:
In a civil case, the court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint *757 any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless he consents to act. A witness so appointed shall be informed of his duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of his findings, if any; his deposition may be taken by any party; and he may be called to testify by the court or any party.
(Emphasis added). Zwei's argument mischaracterizes the court's motivation not to appoint Mr. Gossen appointed as an expert. The court's decision was not made pursuant to a stipulation between the parties. The court imposed a restriction only regarding Mr. Gossen's selection as a court expert, but it did not bar the court expert from requesting mere data or information from Mr. Gossen. Also, from Mr. Godshall's testimony, it appears that Mr. Gossen did not provide his expert opinion, but merely raw data from which Mr. Godshall freely formed his own expert opinion.
Similarly, we disagree with Zwei's argument that the trial court should have excluded Mr. Godshall's summary report on the ground that its probative value is substantially outweighed by the danger of unfair prejudice. Zwei's argument is based on La.Code Evid. art. 403, which states:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
Trial courts are granted great discretion when determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Article 403. State, DOTD v. Louisiana-Arkansas Ry. Co., 97-1360 (La. App. 3 Cir. 11/26/97); 704 So.2d 822.
In the instant case, we find insufficient evidence to convince us that the trial court abused its discretion when declining to exclude Mr. Godshall's summary report. Accordingly, we affirm.

REBUTTAL EVIDENCE
In its assignments of error numbers four, six, seven, and eight, Zwei argues that the trial court erred when it limited its attempt to impeach Mr. Godshall's summary report.
As is set forth in La.Code Civ.P. art. 1634, the parties to a trial have a procedural right to cross-examine a witness. Such a right may not be denied when exercised in the interest of judicial economy or other proper motives. Harry Bourg Corp. v. Punch, 625 So.2d 735 (La. App. 1 Cir.1993). Nevertheless, the scope of the cross-examination lies within the trial court's discretion. The trial court also has great discretion over the admission of rebuttal evidence, and we shall not disturb its decision, absent a showing of an abuse of discretion. Baltzar v. Missouri Pac. R.R., 406 So.2d 324 (La.App. 3 Cir. 1981). As a general rule, providing a party was given a fair opportunity to present its case in chief, the trial court has great discretion in controlling the conduct of trial. See Pias v. Wiggins, 96-499 (La.App. 3 Cir. 10/9/96); 688 So.2d 1103.
In the case sub judice, at the conclusion of the parties' cases, on its own motion, the trial court decided to leave the record open and to appoint a court expert and that the expert should be allowed to look at the appraisals already in the record. Also, prior to receiving rebuttal testimony on Mr. Godshall's report, the trial court warned:
I've discussed this with counsel and feel it is appropriate to allow impeachment evidence, if any, presented by either side with respect to Mr. Godshall's efforts on behalf of the court. However, I believe [sic] inappropriate to introduce new issues into trial, and also inappropriate *758 to now discuss numbersspecific numbers contrary to what either Mr. Godshall has testified to or the experts that have previously testified. That, in my opinion would be to open this matter up to new evidence and that was not the purpose of the Court's seeking an expert.
We find no abuse of discretion.

Restricting Mr. Godshall's Examination
In its assignment of error number four, Zwei argues that the trial court erred in improperly restricting its examination of Mr. Godshall on the actual cash value of the original sale. We find no merit to this argument.
When restricting Zwei's examination of Mr. Godshall, the trial court explained that his appointment was for a limited purpose, aimed at his completion of an appraisal of the "[p]roperty itself," and not regarding the cash sale value of the property. In its reasons for judgment, the trial court stated that "[i]t finds the actual value of the consideration for the sale to be $118,128.87 as testified by [Mr.] Sieferman" (emphasis added). Thus, the trial court did not deprive Zwei of its right to examine a witness on an issue relevant to the case, because Mr. Godshall was not appointed for the purpose of providing an opinion on the value, and the trial court did not rely on this part of Mr. Godshall's report to form its decision. Accordingly, the trial court's decision did not constitute an abuse of its discretion.

Mr. Stewart Stover's Testimony
In its assignment of error number six, Zwei declares that the trial court erred in disallowing Mr. Stover's testimony to rebut Mr. Lane Godshall's report which, it claims, was made on the assumption that there was no environmental contamination present on the property. We find no merit in this argument.
When it denied inclusion of Mr. Stover's testimony, the trial court stated:
What you are doing is you are, in my opinion, adding another element which was not included in the testimony of either your expert or the expert of Mr. Miller at the time of trial. It is an effort, in my opinion, to re-evaluate the value (sic) of the property as opposed to impeach the testimony of Mr. Godshall....
. . . .
[W]hat you are trying to do is re-litigate this whole issue of value. I am not going to, as a result of appointing an expert after you both have closed your case, to give you an opportunity to open up and add another element to this inquiry.
It is well settled that it is within the court's sound discretion to allow additional testimony after both parties have closed their case. Bradford v. Brewton Butane Co., 319 So.2d 892 (La.App. 3 Cir.1975). Given the aforementioned, we do not find that the trial court abused its discretion.

Mr. C.L. Jack Stelly's Testimony
In its assignment of error number seven, Zwei advances that the trial court erred in rejecting its request to use Mr. Stelly's expert testimony to rebut Mr. Godshall's specification on the total acreage of the property.
Mr. Stelly attempted to testify that the total acreage of the farmland on the property was 100.23 acres, an amount not only at variance with Mr. Godshall's assessment, but also with that provided by Zwei's expert in its case in chief. The trial court rejected this line of questioning on the ground that it would not let Zwei impeach the testimony of its own expert witness at this stage of the trial. In that, we find no abuse of discretion.

Mr. George Parker's Testimony
Zwei contends that the trial court erred in restricting its direct examination of Mr. Parker which purported to rebut Mr. Godshall's appraisal. Again, we find no merit in this argument.
*759 Following Mr. Godshall's testimony, Zwei called Mr. Parker to testify as an expert land appraiser. Objections were lodged on the issue of whether 8.69 acres is suitable for a yard for a single residence and whether there would be considerable building permits required concerning the wetlands. The court sustained the objections stating:
[W]hat I don't think is appropriate is to re-litigate what we've already litigated. To impeach is tooris to indicate that what he saidthat this man has a different opinion. That'sas far as I'm concerned, that's as far as it need (sic) to go because I'm not going to re-evaluate these numbersany numbers, except except the experts that testified in your case in chief and also Mr. Godshall. And I'll accept what appraisal is appropriate under the circumstances.
We find no abuse of discretion in that trial court's decision.

LESION BEYOND MOIETY
The law underlying the instant litigation is set forth in La.Civ.Code art. 2589 which states that "[t]he sale of an immovable may be rescinded for lesion when the price is less than one half of the fair market value of the immovable." Originally, the law of lesion was predicated upon a legal presumption that a person selling an immovable for less than half its value was acting under an error of fact sufficient to invalidate the sale, irrespective of whether such error exists as a matter of fact. Blaize v. Cazezu, 210 La. 176, 26 So.2d 689 (1946); Thomas v. Sewell, 239 La. 66, 117 So.2d 912 (1960). The only issue of fact to be determined in this type of case is whether the vendor sold the immovable for less than one-half of the value that it had at the time of the sale. Thomas, 239 La. 66, 117 So.2d 912. This requires that the value of the property the vendee received as well as the consideration received by the vendor be established. The vendor carries the burden of proving lesion beyond moiety by clear and convincing evidence. Hidalgo v. Julian, 98-83 (La.App. 3 Cir. 5/20/98); 715 So.2d 498.
To evaluate the fair market value of a property and consideration exchanged requires that the trial court make a finding of fact, which we review on appeal under the manifest error standard. Id. When the testimony offered by the various experts differs, the determination of which is the most credible is largely a matter for the trier of fact. Agricultural Equip. Co., Inc. v. Rozas, 488 So.2d 241 (La.App. 3 Cir.1986). In such a case, we will not reverse the trial court's assessments, unless the record reveals a manifest error. Id.

HIGHEST AND BEST USE EVALUATION
In its first assignment of error, Zwei argues that the trial court erred in having Mr. Godshall value the property in three different lots, using the highest and best use method, when the property was purchased as a single farm tract with a rural home site. It insists that this determination was based on pure speculation, which our jurisprudence and laws prohibit. Specifically, it declares that the trial court had little or no evidence to conclude that the woodlands would be harvested and the home site sold and developed for residential use or a subdivision.
In general, real estate may be valued under the "highest and best use" method, defined as "[t]he use of land which will bring the greatest economic return over a given time." BLACK'S LAW DICTIONARY 655 (5th ed.1989). The "highest and best use" is that which is most profitable in a foreseeable future, excluding that which is remote or speculative. Succession of Guerin, 542 So.2d 1102 (La.App. 1 Cir.1989).
Our jurisprudence has found the highest and best use method to be applicable in the context of a rescission for lesion beyond moiety. Indeed, in Nation v. Wilmore, 525 So.2d 1269, 1271 (La.App. 3 *760 Cir.), writ denied, 531 So.2d 482 (La.1988), we stated:
[A]ppellate courts have said that in a lesion action a plaintiff is not barred from proof of a higher and better than actual use at the time of sale, but that such evidence will be considered in the light of the state of the property at the time of the sale together with all other attending circumstances affecting fair market value.
It is well settled that in such a context, "[t]he immovable sold must be evaluated according to the state in which it was at the time of the sale," La.Civ.Code art. 2590, and speculative values must be set aside. Armwood v. Kennedy, 231 La. 102, 90 So.2d 793 (1956).
During trial, among others, the court received the testimony of Mr. Richard Norbert Duchamp, an expert in the field of property appraisal, and Mr. Lawayne Ashcraft Sieferman, an expert real estate appraiser. Mr. Duchamp valued the property as a single farm tract with a rural home site and opined its fair market value at the time of the sale to be $136,644.00. Mr. Sieferman valued the property under its highest and best use, divided in four separate parts, to wit: "residence and 8.5 acres," "112 acres cultivation," "82.24 acres wooded," and "timber." He testified that he valued the property "on its current use." Undeniably, at the time of the sale, the property was composed of woodlands, timbers, farmland, a residence, and residential land. Thus, to subdivide the property as such conformed with its natural and existing disposition instead of remote or possible uses, which would amount to speculation. Accordingly, there could be no manifest error in the trial court's decision.

MR. GODSHALL'S EVALUATION
In a lengthy third assignment of error, generally, Zwei propounds that the trial court's decision lacks a rational basis, because it was based on Mr. Godshall's faulty expert opinion.
We reviewed each of the eleven facts alleged herein by Zwei as error, and found none which causes Mr. Godshall's summary report to be defective such as to render the trial court's decision unreasonable. For the most part, Zwei's specifications of error attacks the weight to be given to Mr. Godshall's report.
After reviewing the entire record, we find that the trial court acted with great diligence in ascertaining the value of the property. At the conclusion of the parties' cases, the trial court was unimpressed with the parties' experts' opinions. Concerning Mr. Duchamp's, it stated:
First, Richard Duchamp, valued the property as a whole, without improvements, as having a fair market value of $121,644. If one excludes the marketable timber valued at $49,547, he actually values the property at $72,097, or $355 per acre. This is incredibly low. In fact, it is likely that the 112 acres under cultivation alone have a greater value ($72,097 divided by 112 acres equals $644 per acre). I am compelled to reject his opinion.
Regarding Mr. Sieferman's opinion, the trial court stated:
Mr. Sieferman, on the other hand, has valued the woodland unreasonably high. He believes it has a fair market value of $600 per acre after the timber is harvested. This is excessive when viewing the comparables. And while there is no doubt this land has value after the merchantable timber is sold, I believe Mr. Godshall's values to be far more realistic.
Mr. Godshall's final appraisal appears in a summary report as follows:

 Indicated
Component # Acres Value
---------------------------------------------------------
Agricultural Land 111.8 $111,800
Residential Land 8.50 51,000
 Dwelling 24,700
Timberland 82.44 24,732
 Timber 46,732
 ______ ________
Totals 202.74 $258,964
Conclusion Rounded $260,000
Indicated Per Acre Value $1,282

*761 Although higher than the evaluation that Mr. Duchamp suggested, Mr. Godshall's appraisal is $56,000.00 lower than the one Mr. Sieferman submitted, and which the trial court judged excessive. Our review of the record does not reveal that Mr. Godshall's evaluation relied on speculation. In general, when expert testimonies differ, the trial court is entitled to great deference in its determination of the weight of the evidence. Waterbury v. Waterbury, 496 So.2d 1374 (La.App. 3 Cir.1986), writ denied, 499 So.2d 88 (La.1987). We will not reverse its assessments on appeal, absent finding that it is a manifest error. Finding that it is not, we affirm.

MR. SIEFERMAN'S CASH EQUIVALENT SALE PRICE EVALUATION
In its assignment of error number five, Zwei advances that the trial court erred in relying on Mr. Sieferman's testimony to find that the value of the sale was $118,128.87. First, it insists that the trial court should not have relied on Mr. Sieferman's evaluation after it found his appraisal of the woodlands to be extreme. We find no merit to this argument. When determining the value of a property for the purpose of rescission for lesion beyond moiety, "[t]he court is not bound to accept or reject one expert's testimony, but parts of each expert's testimony may be accepted...." Waterbury, 496 So.2d at 1378 [quoting Bisco v. Middleton, 383 So.2d 1047, 1049 (La.App. 1 Cir.1980) ]. Thus, it was not per se improper for the trial court to find that the value of the sale was $118,128.87, based on Mr. Sieferman's evaluation, simply because it found that some of Mr. Sieferman's evaluation was excessive.
Second, Zwei asserts that the trial court erred in finding, from Mr. Sieferman's report, that the value of the sale was $118,128.87 when the report itself submits a total value of $120,80249, after adding Ms. Caillouet's usufruct. In its judgment dated December 15, 1998, the trial court found "the actual value of the consideration for the purchase of the property" to be $118,128.87. In its reasons for judgment issued on October 28, 1998, it found "[t]he actual value of the consideration for the sale to be $118,128.87 as testified by [Mr.] Sieferman." Although it is still unclear which amount the trial court actually used, clearly, it should have used $120,802.00. Nevertheless, Zwei's argument is to no avail. In fact, it does not matter which of the two amounts the trial court actually used, as either figure results in a lesion beyond moiety.

CONCLUSION
For the foregoing reasons, the trial court's decision is affirmed. We assess the costs of the appeal to the appellant.
AFFIRMED.