13 So.3d 244 (2009)
SAFEGUARD STORAGE PROPERTIES, L.L.C., et al.
v.
DONAHUE FAVRET CONTRACTORS, INC., et al.
No. 2009-C-0344.
Court of Appeal of Louisiana, Fourth Circuit.
May 27, 2009.
James Garner, Darnell Bludworth, Megan M. Dupuy, Mary Beth Akin, Sher Garner Cahill Richter Klein & Hilbert, L.L.C. New Orleans, Louisiana, for Safeguard Storage Properties, Et Al.
*245 Robert I. Siegel, Andrew A. Braun, Elizabeth A. Chickering, Geiger, Laborde & Laperouse, LLC, New Orleans, LA, for Lexington Insurance Company and American International Specialty Lines Insurance Company.
(Court composed of Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD, Judge PAUL A. BONIN).
TERRI F. LOVE, Judge.
This application for supervisory writ was docketed for oral argument pursuant to Rule 4-7 of the Uniform RulesCourts of Appeal.
After filing for supervisory review, Safeguard filed a motion to supplement the record with newly discovered evidence. "An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence." Bd. of Dir. of the Indus. Dev. Bd. v. All Taxpayers, Prop. Owners, Citizens of the City of New Orleans, 03-0827, p. 4 (La.App. 4 Cir. 5/29/03), 848 So.2d 733, 737. The Louisiana Supreme Court expressly stated that appellate courts are "prohibited from receiving new evidence." B.W.S., Jr. v. Livingston Parish Sch. Bd., 06-1981, p. 2 (La.8/16/06), 936 So.2d 181, 182. Accordingly, as the motion seeks to supplement the appellate record with new evidence, Safeguard's motion is denied and the writ will be determined on the record before us.[1]
Safeguard Storage Properties, L.L.C., et al. ("Safeguard"), seeks supervisory review of the trial court's judgment granting a motion to disqualify Safeguard's expert brought on behalf of defendants, Lexington Insurance Company and American International Specialty Lines Insurance Company (collectively, "defendants").
Defendants filed a motion to disqualify Safeguard's expert, R. Christian Sonne ("Mr. Sonne"), on the basis that Mr. Sonne possessed confidential defense attorney work-product information. The trial court heard oral argument, conducted an in camera inspection of defense counsel's handwritten notes, and questioned defense counsel regarding his conversations with Mr. Sonne. The trial court granted the motion to disqualify Mr. Sonne upon the utilization of federal jurisprudence and found that Mr. Sonne "switched sides," noting that the communications were "protected pursuant to Louisiana Code of Civil Procedure 1425(E)(1)." Safeguard filed a motion for new trial, which the trial court denied.
Safeguard asserts that Mr. Sonne was never retained as an expert because defendants never fulfilled Mr. Sonne's expressed conditions for retention, i.e. the letter of engagement and retainer.[2] Safeguard further argues that even if Mr. Sonne was retained by defendants, Mr. Sonne was never provided with confidential information. Specifically, Safeguard contends that the documents provided to Mr. Sonne were either documents produced by Safeguard or documents generated in connection with discovery requests propounded to Safeguard.
Louisiana has not enumerated a bright-line rule for the disqualification of experts and, as such, both the relator and respondent suggest the utilization of federal jurisprudence. However, the Court of Appeal, Second Circuit, State of Louisiana, *246 held that the trial court improperly excluded the testimony of an expert who was previously hired and then dismissed by an adverse party. Dartlone v. Louisiana Power & Light Co., 33,597, p. 12 (La.App. 2 Cir. 6/21/00), 763 So.2d 779, 787. In Dartlone, the expert was retained by the defendant and was released from employment prior to trial. Id. The defendant then asserted a conflict of interest prohibiting the expert from testifying on behalf of another party. Id. The court found that the expert's testimony should not be prohibited and opined that "[a]n expert is not a party or a party's representative and there is no presumption that an expert is adverse or hostile to anyone." Id. In the case sub judice, Mr. Sonne was never retained, as his retention letter was never signed and fee never paid. However, according to Dartlone, retention is moot. Dartlone represents that once a party has declined the future services of an expert, another party involved in the litigation is free to retain him for consultation, etc.
Further, the Louisiana Supreme Court held in 1984 that La. C.C.P. art. 1425(2) and 1424 did not create a "privilege against the use of the expert as a witness at trial by the opposing party." State, Dep't of Transp. and Dev. v. Stumpf, 458 So.2d 448, 454 (La.1984). In 1984, La. C.C.P. art. 1425(2) provided that:
(2) A party may discover facts known by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Article 1465 or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts on the same subject by other means.
La. C.C.P. art. 1425 was revised to widen the scope of discoverable materials from experts and currently reads, in pertinent part:
D. (1) Except as otherwise provided in Paragraph E of this Article, a party may, through interrogatories, deposition, and a request for documents and tangible things, discover facts known or opinions held by any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under Paragraph B, the deposition shall not be conducted until after the report is provided.
(2) A party may, through interrogatories or by deposition, discover facts known by and opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Article 1465 or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.
....
E. (1) The expert's drafts of a report required under Paragraph B of this Article, and communications, including notes and electronically stored information or portions thereof that would reveal the mental impressions, opinions, or trial strategy of the attorney for the party who has retained the expert to testify, shall not be discoverable except, in either case, on a showing of exceptional circumstances under which it is impractical for the party seeking discovery to obtain facts or opinions on the same subject by other means.
(2) Nothing in this Article shall preclude opposing counsel from obtaining any facts or data the expert is relying on in forming his opinion, including that coming *247 from counsel, or from otherwise inquiring fully of an expert into what facts or data the expert considered, whether the expert considered alternative approaches, or into the validity of the expert's opinions.
Defendants assert that La. C.C.P. art. 1425(E)(1) creates an undiscoverable protection of information. However, La. C.C.P. art. 1425(E)(1) contains the same caveat, in regards to discoverability, as the section interpreted by the Louisiana Supreme Court in 1984: "a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts on the same subject by other means." The language is identical to that the Stumpf Court found did not create a privilege, which would necessitate the disqualification of an expert with previous association with an opposing party. The legislature did not intend to fervently protect the information since the revision provides for discovery.
Accordingly, we find that Louisiana jurisprudence does not require the disqualification of Mr. Sonne and reverse.
WRIT GRANTED
BONIN, J., concurs with reasons.
BONIN, J., concurs with reasons.
I respectfully concur in the granting of Safeguard's writ application. The trial court disqualified an expert witness based upon a claim of "switching sides." The only legal basis for the trial court's action is, according to the respondent, the inherent power of the courts. La. C.C.P. art. 191 ("A court possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law."). Of course, inherent power is not co-extensive with unlimited power, and the trial court committed legal error when it fell into such an inviting trap.
There is no question that the federal courts, and some state courts, have granted this sort of relief in, for the most part, the unexamined belief that the "inherent powers" of courts extends to such actions. See, Kendall Coffey, "Inherent Judicial Authority and the Expert Disqualification Doctrine," 56 FLA. L. REV. 195, 196-7 (2004):
[T]o address conflicts of interest for expert witnesses and consultants, federal courts have developed a distinctive jurisprudence that is not anchored upon the explicit terms of procedural rules, ethical strictures, or even Supreme Court precedent. Instead, a series of federal lower court decisions have crafted an expert-disqualification doctrine based upon a court's inherent authority to safeguard the integrity of the judicial process and maintain the public's confidence in the court system. Although critical differences have subsequently emerged in the way courts deploy this inherent authority, key features of the underlying doctrine are still widely followed, despite the lack of procedural rules or extensive appellate case law to direct these principles.
It may well be that the inherent power of the federal courts extends to the extraordinary exercise of power by a judge to exclude a qualified expert witness from testifying. For example, the U.S. Supreme Court approved dismissal of a case as a sanction for egregious litigation abuses, exclusively on the basis of the court's inherent judicial power, but notably stated that "[t]he power is of ancient origin, having its roots in judgments of nonsuit and non prosequitur entered at common law." Link v. Wabash R. Co., 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (bold emphasis added). More to the *248 point of our examination, however, is the caution expressed by the U.S. Supreme Court in Degen v. United States, 517 U.S. 820, 823-24, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996) when a court purports to act under its inherent authority powers:
The extent of these powers must be delimited with care, for there is danger in overreaching when one branch of the Government, without benefit of cooperation or correction from the others undertakes to define its own authority.... Principles of deference counsel restraint in resorting to inherent power and requires its use to be a reasonable response to the problems and needs that provoke it.
"Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). This even more so applies to the courts of our state which, in our limited form of government, do not possess far reaching inherent powers. La. Const., art. V, § 2 (1974) addresses the inherent powers of Louisiana courts: "A judge may issue writs of habeas corpus and all other needful writs, orders, and process in aid of the jurisdiction of his court.... The power to punish for contempt shall be limited by law." (emphasis added).
In Economy Carpets Mfrs. & Dist., Inc. v. Better Bus. Bur. of Baton Rouge Area, Inc., 330 So.2d 301, 304-05 (La.1976), the trial court had issued a protective order under La. C.C.P. art. 1631, which "article is a partial restatement of courts' inherent judicial authority and power of supervision."[1] Relying upon its earlier ruling in the same case, the Supreme Court noted that "[u]nquestionably, this power and authority would furnish ground for the issuance of a protective order to assure the fair administration of justice. [citation omitted] However, the judicial authority, as all powers of government, is not without limit...." Economy Carpets v. BBB, 330 So.2d 301, 304 (La.1976) (emphasis added).
I write separately to emphasize that the problem presented in the motion to disqualify a qualified expert witness is resolved within Louisiana's statutory scheme. There is extensive legislation concerning expert witnesses which legislation, when considered as a whole, precludes the exercise of a power to exclude a witness for "switching sides." La. C.E. art. 702 is a starting point:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
(emphasis added)
The purpose of an expert witness, as authorized by the legislature, is to assist the trier of fact, whether the judge or jury. While experts may sometimes be perceived to be in the "swearing-for-hire business"[2], under our statutory provisions, the expert witness is not an advocate for one side or the other. The expert witness, like any other witness, does not have a "side" from which to switch. The second circuit in Dartlone v. Louisiana Power & Light Co., 33,597 (La.App. 2 Cir. 6/21/00), 763 *249 So.2d 779, 787, made this point quite well in finding that a trial judge committed legal error in disqualifying a qualified expert witness on the basis of his testifying for a party different from the one who had initially engaged him:
An expert is not a party or a party's representative and there is no presumption that an expert is adverse or hostile to anyone. As such, an expert's testimony may be considered by the court in its search for the truth. [citation omitted] Provided [the expert's] testimony meets the requirements of La. C.E. art. 702, which we find it clearly does, it was improper to exclude his testimony on the basis of such perceived conflict of interest.
An expert witness is an adjunct to the trier of fact. His or her responsibilities can be properly distinguished from an expert consultant. The witness' primary responsibility is to the fact-finder and the consultant is presumably engaged by an advocate to be his adjunct.[3] The legislature has distinguished between an expert witness and an expert consultant in its treatment of the discovery the facts and opinions of each. Unlike the discovery of opinions of an expert witness under La. C.C.P. art. 1425(D)(1) "whose opinions may be presented at trial," the more restrictive discovery of the opinions of an expert consultant "who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial" are conditioned "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." La. C.C.P. art. 1425(D)(2).
However, neither the expert witness nor the expert consultant can be hidden from the adversary. As noted in its original opinion, the Supreme Court in State, Dep't of Transp. and Dev. v. Stumpf, 458 So.2d 448, 453-454:
Prior to trial a party can talk with any "fact witness." The witness, however, has the right to refuse to talk. Similarly, a party can talk to any expert witness although the expert can refuse to talk. Once the witness, whether fact or expert, refuses to talk, the party seeking disclosure can invoke discovery rights in La.Code Civ. P. art. 1422 et seq., and compel disclosure within the limitations of those articles....
Articles 1452(2) and 1454, limiting the rights of an opposing party to compel disclosure by another's expert of his opinion or the facts on which his opinion is based, do not create a privilege against the use of the expert as a witness at trial by the opposing party. The articles are neither limited by nor do they limit the admissibility of evidence at trial. Hence, we agree with landowners that in an expropriation case the landowner should be allowed to call as his own witness an expert retained but not called as a witness by the condemning authority....
Landowners can subpoena the experts to appear as their own witnesses at trial.
On rehearing, the Supreme Court emphasized any contractual provision preventing the calling of these experts by the adversarial party "would be against public policy and therefore of no legal effect." Id. at 454. Their knowledge is, dependent upon the circumstances, available to any party during discovery, but is always available to *250 the trier of fact when called by any party. This statutory distinction reflects and reinforces the legislative determination that an individual who is expert under La. C.E. art. 702 is not the chattel of the advocates or the parties.
La. C.C.P. art. 1425(E)(1) when read in pari materiae with La. C.C.P. art. 1424(A) underscores the legislative choice that the expert witness does not belong to a side. Article 1424(A) treats the conditions under which discovery may be had of work product materials, including attorney work product, which are generally privileged. La. C.E. art. 509. However, the last sentence of article 1424(A) imposes an important ban on disclosure, except in the case of an expert witness: "Except as otherwise provided in Article 1425(E)(1), the court shall not order the production or inspection of any part of the writing, or electronically stored information, that reflects the mental impressions, conclusion, opinions, or theories of an attorney." (emphasis added). This nearly absolute ban on disclosure finds its sole exception in La. C.C.P. art. 1425(E)(1), which provides:
The expert's drafts of a report required under Paragraph B of this Article, and communications, including notes and electronically stored information or portions thereof that would reveal the mental impressions, opinions, or trial strategy of the attorney who has retained the expert to testify, shall not be discoverable except, in either case, on a showing of exceptional circumstances under which it is impractical for the party seeking discovery to obtain facts or opinions on the same subject by other means.
(emphasis added)
The clear import of reading these legislative provisions together is that the only time an attorney for one side imperils disclosure of his mental impressions, opinions, or trial strategy, in the absence of waiver, is when they are shared with an expert whom the advocate expects to call as a witness.
La. C.C.P. art. 1425(E)(2) makes clear that an expert witness must disclose "facts and data the expert is relying on in forming his opinion, including that coming from counsel ..." (emphasis added) Therefore, facts and data, supplied by the attorney for one side, are not protected by the work product privilege. All of these legislative enactments, in my view, lead to the inescapable conclusion that an expert witness, at least in Louisiana, does not have a side from which to switch. Because of the expert witness' responsibilities to the trier of fact, an attorney who retains an expert witness and shares his or her own mental impressions and trial strategy with the expert witness must understand that the attorney does not thereby possess either the expert witness or the expert witness' opinion.
The legislature has provided a rather elaborate procedure for the trial court "to determine whether a witness qualifies as an expert or whether the methodologies employed by such witness are reliable under Articles 702 through 705 of the Louisiana Code of Evidence." La. C.C.P. art. 1425(F). Exercising a "gatekeeper" function, a trial judge may exclude a person as an expert witness who is unqualified. State v. Foret, 628 So.2d 1116, 1123 (La. 1993), relying upon Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). There is nothing in the statutory provisions which extend that gatekeeper function to rejecting a qualified expert witness as disqualified.[4] The parties here agree *251 that the expert witness, Mr. Sonne, is highly qualified.
Therefore, we return to the central issue in this matter: on what lawful basis is a witness, qualified by La. C.E. arts. 702 through 705 to give opinion testimony, disqualified by the court? La. C.E. art. 602, which requires that a witness testify on "personal knowledge," does not apply to expert witnesses. La. C.E. arts. 605 and 606 provide for the disqualification of judges and jurors, respectively, as witnesses. Lawyers are normally disqualified as witnesses in their own causes under Rule 3.7 of the Louisiana Supreme Court Rules of Professional Conduct. See Franklin Credit Mgmt. Corp. v. Gray, 07-1433, pp. 8-10 (La.App. 4 Cir. 1/14/09), 2 So.3d 598, 603-605 (Bonin, J., concurring) and the cases cited therein.[5]
There is no question that Mr. Sonne has relevant evidence to assist the trier of fact. La. C.E. art. 401. Cheairs v. State, Dept. of Trans. & Dev., 03-0680 (La.12/3/03), 861 So.2d 536. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation...." La. C.E. art. 402. This leads to La. C.E. art. 403, which forecloses the notion that a Louisiana court can disqualify an expert witness under its "inherent power." Article 403, which was not employed in the decision below, provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
If Mr. Sonne's testimony is to be excluded, it must be from the application of article 403 alone.[6]Clay v. Int'l. Harvester Co., 95-1572 (La.App. 3 Cir. 5/8/96), 674 So.2d 398. The Third Circuit noted that article 403 "is applicable to all evidence, fact or expert, and permits exclusion of evidence whose probative value is substantially outweighed by certain dangers that threaten the validity of fact finding or by considerations of judicial economy." Id., p. 7, 674 So.2d at 404. Clay was following similar treatment of applying article 403 to expert testimony in Adams v. Chevron, U.S.A., Inc., 589 So.2d 1219, 1223 (La.App. 4 Cir.1991) and Frederick v. Woman's Hosp. of Acadiana, 626 So.2d 467, 471 (La.App. 3 Cir. 5/8/96).[7]
The probative value of the testimony of a court-appointed expert witness who relied *252 upon a report from an expert non-witness who had family ties to one side of the litigation was not found to have been "substantially outweighed by the danger of unfair prejudice." Caillouet v. Zwei Bruderland, L.L.C., 99-590, pp. 5-6 (La.App. 3 Cir.11/3/99), 746 So.2d 752, 756-57. In Harrington v. Velinsky, 567 So.2d 148 (La. App. 2 Cir.1990), where the opposing party was arguing that under article 403 the testimony of Sgt. Gurley, who was both a party and an employee of another party, the court in rejecting the argument held:
Even though an expert witness is a party to a lawsuit, that fact alone is not sufficient to exclude his testimony.... The fact that a witness is a party or an employee of a party does not preclude his qualification as an expert. In such cases, the potential bias of the witness may be explored on cross-examination and argued to the jury.
A trier of fact can evaluate expert testimony by means of cross-examination and by comparison between or among experts at trial. The fact-finder can conclude that one expert is "more credible and compelling than" another. Radlein v. Holiday Inns, Inc., 07-0322, p. 8 (La.App. 4 Cir. 11/14/07), 971 So.2d 1200, 1205. "Where the fact-finder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony." Adams v. Rhodia, 07-2110, p. 11 (La.5/21/08), 983 So.2d 798, 807.
Clearly, our courts do not need to resort to an expansive notion of inherent powers to address whether an otherwise qualified expert should be disqualified from testifying. We have our instructions from the legislature on the proper procedure, and we have our traditional methods to obtain and decide the truth: adversarial cross-examination and fact-finder evaluation of credibility. I concur, therefore, in the majority's decision to permit Safeguard to call Mr. Sonne as its own witness at the trial of this matter.
NOTES
[1] As the motion was unopposed, this Court indicated that the supplement would be granted at oral argument. However, this Court is prohibited from receiving new evidence into the record.
[2] It is undisputed that the defendants never "retained" as Mr. Sonne's retention agreement was never signed.
[1] La. C.C.P. art. 1631(B) provides for the "exclusion of witnesses [which] is governed by Louisiana Code of Evidence Article 615." The exclusion of witnesses treated in La. C.E. art. 615 involves exclusion of witnesses from the courtroom during proceedings.
[2] See, Gerry Spence, WITH JUSTICE FOR NONE 270 (1989).
[3] Fed. R. Civ. Pro. 26(b)(94)(B); La. C.C.P. art. 1425(D)(2). The consultant may also be a party's rejected witness.
[4] Occasionally, "unqualified" and "disqualified" may unintentionally, but inaccurately, be used interchangeably. See, for example, Walker v. Avondale Industries, Inc., 09-0047 (La.App. 4 Cir. 1/15/09), 2009 WL 186184 (Jones, J., dissenting), and Walker v. Avondale Industries, Inc., 2009 WL 211817 (unpublished Per Curiam of Civil District Court Judge Michael Bagneris).
[5] The majority opinion in Franklin Credit includes an excellent summary of decisions treating what Judge Tobias called the "advocate-witness rule." While in my concurring opinion in Franklin, at p. 11, 2 So.3d at 605, I expressed my view that the discussion of the rule was "wholly unnecessary" to the result, that view does not detract from the accuracy of the summary.
[6] Fed. R. Civ. Pro. 403 is nearly identical, adding a clause "or needless presentation of cumulative evidence." Tellingly, not one of the federal expert disqualification cases for "switching sides" relies upon this federal rule as the source of the exercise of authority to disqualify a qualified expert.
[7] The holding in Adams was expressly overruled in Clement v. Griffin, 91-1664 (La.App. 4 Cir. 3/3/94), 634 So.2d 412 because of the intervening Daubert decision. Daubert, however, has no impact upon the holding of Adams regarding applicability of article 403 to expert testimony and evidence. See Williams v. General Motors Corp., 93-0287 (La.App. 4 Cir. 2/11/94), 639 So.2d 275, 289, a post-Daubert decision.